UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                        Plaintiff,

            v.

GILDARDO CAZARAS, aka Gildardo
Cazarez-Chavez,

                        Defendant.

No.  4:15-CR-6024-EFS

**ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS**

    A hearing occurred in the above-captioned matter on October 6,
2015. Defendant Gildardo Cazaras was represented by Rebecca Pennell
and assisted by a Spanish-speaking interpreter. Mary Dimke appeared on
the behalf of the United States of America. The Court reviewed Mr.
Cazaras' Motion to Dismiss, ECF No. 26, related briefing, and case
law, and considered oral argument. Mr. Cazaras asks the Court to
dismiss the Indictment because it is predicated on an invalid order of
removal as it was based on Mr. Cazaras' misdemeanor theft conviction—a
conviction that is not an aggravated felony or a crime of moral
turpitude. The United States opposes the motion, contending that the
theft statute is divisible between theft of services and theft of
property, and Mr. Cazaras' theft-of-property conviction constituted an

aggravated felony. This Order supplements and memorializes the Court's ruling granting Defendant's motion.

**A.    Background**

Mr. Cazaras is a citizen of Mexico, who immigrated to the United States with his parents when he was a child. In 1995, he received lawful permanent residence status in the United States. ECF No. 26, Ex. A at 14. A year later, at the age of 19, Mr. Cazaras was cited for violating Kennewick Municipal Code § 10.10.020, which is consistent with RCW 9A.45.020, by committing the misdemeanor offense of theft third/shop-lifting. ECF No. 26, Ex. B at 39. Mr. Cazaras pled guilty and was sentenced to 365 days in jail with 350 days suspended. He was allowed work crew after two days in jail. *Id.*, Ex. C at 40.

Mr. Cazaras remained in the United States for several years and retained his lawful permanent resident status. In 2003, Mr. Cazaras was convicted of felony hindering prosecution in violation of Oregon Revised Statute 162324. ECF No. 26, Ex. D at 41-43. He received a sentence of three-years probation. *Id.*

Following the 2003 conviction, Mr. Cazaras received a Notice to Appear, alleging that he was deportable from the United States as an aggravated felon due to his theft conviction. *Id.*, Ex. E at 23-24. During the immigration proceeding, Mr. Cazaras was represented by Kaaren Barr[1] and then Aimee Souza. *Id.*, Ex. F-M. The immigration judge permitted the government to add charges against Mr. Cazaras, alleging

---

[1] In 2012, Ms. Barr was disbarred by the Washington State Bar Association given her inadequate representation of clients in her immigration practice. *See* Washington State Bar Ass'n, *Discipline Notice – Kaaren L. Barr*, March 9, 2012, available at https://www.mywsba.org/DisciplineNotice/DisciplineDetail.aspx?dID=1641.

1  that Mr. Cazaras was also removable on the basis of having convictions

2  for two crimes of moral turpitude—his misdemeanor theft conviction and

3  felony hindering prosecution conviction. The immigration judge

4  determined that Mr. Cazaras' theft offense was an aggravated felony,

5  and continued the hearing to determine whether hindering prosecution

6  was a crime of moral turpitude or whether Mr. Cazaras was eligible for

7  relief from deportation. After receiving briefing from the parties,

8  the immigration judge determined that both of Mr. Cazaras' prior

9  convictions were crimes of moral turpitude and that Mr. Cazaras was

10  not eligible for relief from deportation because he had been convicted

11  of an aggravated felony. The immigration judge issued a written order

12  of removal in 2005. *Id.* at 77.

13      Mr. Cazaras appealed the case to the Board of Immigration

14  Appeals (BIA). *Id.* at 81-82. The BIA dismissed the appeal on the

15  merits, finding that Mr. Cazaras had been convicted of two crimes of

16  moral turpitude and that he was not eligible for relief from

17  deportation because he had been convicted of an aggravated felony. *Id.*

18      Mr. Cazaras deported himself to Mexico, pursuant to the terms of

19  his bail order. Then in March 2012, Mr. Cazaras was twice found in the

20  United States. On both of these occasions, the U.S. Department of

21  Homeland Security issued notices to Mr. Cazaras, reinstating his April

22  27, 2005 order of removal. A warrant of removal was executed on both

23  March 7, 2012, and March 21, 2012. *Id.*, Exs. S & U.

24      On August 11, 2015, the instant Indictment, charging Mr. Cazaras

25  with illegally reentering the United States subsequent to his prior

26  deportation on March 21, 2012, was filed.  ECF No. 14.

**B.    Authority and Analysis**

The Fifth Amendment's due process clause affords a criminal defendant charged with violating 8 U.S.C. § 1326 with an opportunity to seek judicial review of an underlying deportation. *United States v. Zarate-Martinez*, 133 F.3d 1994, 1197 (9th Cir. 1998), *overruled on other grounds by United States v. Corona-Sanchez*, 291 F.3d 1201 (9th Cir. 2002). To collaterally attack the deportation order underlying a § 1326 criminal proceeding, the defendant must show:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). The first two requirements—exhaustion and improper denial of judicial review—are satisfied if the defendant establishes that the immigration judge improperly failed to inform him of his eligibility for relief. *United States v. Arias-Ordonez*, 597 F.3d 972, 977 (9th Cir. 2010). The third requirement—entry of the order was fundamentally unfair—can be met by showing that 1) the defendant's due-process rights were violated during the underlying deportation proceeding and 2) he suffered prejudice as a result. *See, e.g.*, *United States v. Ramon*, 623 F.3d 672, 680 (9th Cir. 2010); *United States v. Leon-Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994).

Mr. Cazaras argues that his due-process rights were violated because he did not have two crimes of moral turpitude and his theft conviction is not an aggravated felony and therefore he was prejudiced

by the immigration judge failing to advise him that he was eligible for relief from deportation.

First, as to whether Mr. Cazaras' due-process rights were violated, the parties agree that Mr. Cazaras' prior conviction for theft does not qualify as a crime of moral turpitude in light of *Washington v. Komok*, 113 Wn.2d 810 (1989), and *Castillo-Cruz v. Holder*, 581 F.3d 1154, 1159 (9th Cir. 2009). Because an individual is deportable if he has two or more prior convictions for moral-turpitude crimes, and Mr. Cazaras only has one prior moral-turpitude crime, he was not deportable under this standard.

Therefore, the central issue is whether Mr. Cazaras' 1996 state-court misdemeanor theft conviction was an aggravated felony for which he was subject to deportation. If Mr. Cazaras' theft conviction was an aggravated felony, then he was not eligible for relief from removal, and the immigration judge's failure to inform him about the availability of such relief cannot have prejudiced him.

To determine whether a state conviction qualifies as an aggravated felony under the Immigration and Nationality Act (INA), the court employs a categorical approach to evaluate whether the state statute defining the crime of conviction categorically fits within the INA's definition of "aggravated felony." *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013). Under the categorical approach, the court must consider only what conduct the state statute necessarily involved, not the specific facts underlying the conviction. *Moncrieffe*, 133 S. Ct. at 1684. The court presumes that the conviction rested on the "least of

the acts criminalized," as long as there is a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the definition of "aggravated felony." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). If the court finds that the statute of conviction is not categorically an aggravated felony, i.e., that there is some conduct proscribed by the state statute that would not be punished as an INA aggravated felony— then the court must determine whether the modified categorical approach may be used to facilitate the categorical analysis. *Descamps*, 133 S. Ct. at 2283. The modified categorical approach is appropriate if the state statute of conviction lists multiple alternative versions of the crime, such that the court cannot determine for which crime the defendant was convicted. *Id.* Such a statute is considered "divisible." *Id.* When faced with a divisible statute, the court may look beyond the statute to a narrow set of documents, such as the indictment or the plea agreement, to determine which portion of the statute covered the defendant's conviction. *Id.* at 2285.

With this analytical framework, the Court turns to the statutes at issue here. To qualify as an aggravated felony under the INA, a misdemeanor-theft conviction must meet the requirements of INA § 101(a)(43). *United States v. Gonzalez-Tamariz*, 310 F.3d 1168 (9th Cir. 2002); *Habibi v. Holder*, 673 F.3d 1082, 1088 (9th Cir. 2011). A "theft offense" under INA § 101(a)(43)(G), which will be referred to as "generic federal theft," means "a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such

deprivation is less than total or permanent." *Huerta Guevara v. Ashcroft*, 321 F.3d 883, 886 (9th Cir. 2003) (quoting *Corona-Sanchez*, 291 F.3d at 1205), superseded on other grounds by statute as explained in *United States v. Gomez-Mendez*, 486 F.3d 599, 604-05 (9th Cir. 2007).

In comparison, Defendant's theft offense was defined as:

(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or
(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or
(c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him of such property or services.

Kennewick Munic. Code § 10.10.015; *see also* RCW 9A.45.020.

Washington's theft statute clearly encompasses more conduct than the generic federal theft. The USAO submits the Court can utilize the modified categorical approach to ascertain whether Mr. Cazaras' theft conduct satisfies the generic federal theft definition because the Washington theft statute is divisible as it provides for criminal liability for a theft of "property *or* services of another *or* the value thereof." Kennewick Munic. Code § 10.10.015 (emphasis added). Defendant disagrees that the inclusion of "or" in § 10.10.105(a) makes the statute divisible. The Court finds that both parties are in part correct: Kennewick Municipal Code § 10.10.015 is divisible into three subsections, but § 10.10.015(a) is not divisible. The parties agree that the focus is on subsection (a): "To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or

ORDER – 7

services." This subsection is indivisible; the use of the term "or" between property and services does not cause this theft subsection to be divisible.

This determination that § 10.10.015(a) is indivisible is consistent with the Ninth Circuit's decision in *Rendon v. Holder*, 764 F.3d 1077 (9th Cir. 2014), and the Washington Supreme Court in decision *Washington v. Linehan*, 147 Wn.2d 638 (2002). In *Rendon*, the Ninth Circuit amplified on the Supreme Court's divisible-indivisible distinction in *Descamps*, holding that "the presence of an 'or' between 'grand or petit larceny' and 'any felony' does not, in itself, render the statute divisible." 764 F.3d at 1081. The critical distinction between divisible statutes and indivisible statutes is "that while indivisible statutes may contain multiple, alternative *means* of committing the crime, only divisible statutes contain multiple, alternative *elements* of functionally separate crimes." *Id.* at 1084-85 (emphasis in original). To aid in distinguishing between alternative means of committing the crime versus alternative elements of separate crimes, the court should consider whether the "state law requires that in order to convict the defendant the jury must unanimously agree that he committed a particular substantive offense contained within the disjunctively worded statute;" if so, then the "statute contains alternative *elements* and not alternative *means*." *Id.* at 1086.

In *Washington v. Linehan*, in the context of a defendant's challenge to the jury instructions regarding the Washington theft statute, RCW 9A.56.030, and the Washington statute defining theft, RCW 9A.56.020, the Washington Supreme Court determined that "theft" is one

offense, which can be committed in a variety of means, none of which require jury unanimity. To prove a violation of the Washington theft statute, the prosecutor does not need to prove, nor the jury unanimously agree, that the defendant specifically took property, services, or the value thereof. Rather, the jury simply needs to unanimously agree that the defendant took property and/or services and/or or the value thereof. Therefore, theft's item-taken element has three different means of commission, and the jury need unanimously agree as to one specific item-taken means. *See Linehan*, 147 Wn.2d at 649; *see also* Washington Pattern Jury Instruction 4.25, Jury Unanimity ("When a statute sets forth a single offense that may be committed by alternative means, there must be jury unanimity as to guilt for the single crime charged. However, unanimity is not required as to the means by which the crime was committed, provided there is substantial evidence to support each of the alternative means."

Accordingly, based on *Linehan* and the language of Kennewick Municipal Code § 10.10.015, the Court finds that § 10.10.015(a)'s language is broader than the INA's generic federal theft, which only applies to property, not services. Because § 10.10.015(a) encompasses conduct that is not within the generic theft offense, and § 10.10.015(a) is indivisible, the Court determines that Cazaras' prior theft conviction does not qualify as an aggravated felony. As a result, Cazaras' due process rights were violated when the immigration judge failed to advise him that he was eligible for relief from deportation. *See United States v. Martinez*, 786 F.3d 1227, 1230 (9th Cir. 2015).

C.    **Conclusion**

Because Mr. Cazaras' misdemeanor theft conviction is neither a crime of moral turpitude nor an aggravated felony, his due process rights were violated when the immigration judge failed to advise him that he was eligible for relief from deportation. Mr. Cazaras suffered prejudice as a result of this violation. Therefore, Mr. Cazaras' prior order of removal may not be the predicate for this § 1326 indictment. Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendant's Motion to Dismiss, **ECF No. 26**, is **GRANTED**.

2.    The Indictment is **DISMISSED with prejudice**.

3.    Defendant shall be **RELEASED** from U.S. Marshal custody.

4.    All hearings and trial are **STRICKEN**.

5.    This file shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel, the U.S. Probation Office, and the U.S. Marshals Service.

**DATED** this  7th  day of October 2015.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

Q:\EFS\Criminal\2015\6024.dismiss.lc1.docx

ORDER - 10